IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
August 4, 2009 Session

## STATE OF TENNESSEE v. KENNETH RAY WILLIS

### Direct Appeal from the Criminal Court for Shelby County
No. 05-01311     Paula Skahan, Judge

---

### No. W2008-01448-CCA-R3-CD  - Filed January 20, 2010

---

A Shelby County jury found the defendant, Kenneth Ray Willis, guilty of DUI by impairment, a Class A misdemeanor, on February 29, 2008.  On appeal, the defendant argues that the trial court erred in (1) overruling a defense motion to limit testimony of a witness for the state; (2) overruling a defense objection to a witness narrating a videotape; (3) denying a defense motion for the judge to recuse herself; (4) ordering the defense to move for a directed verdict prior to the close of the state's case; and (5) denying a special jury instruction.  The defendant has waived appellate review of these claims.  Additionally, the defendant argues that the trial court erred in (1) overruling a defense objection to the introduction of certain evidence; (2) limiting cross-examination of a witness for the state; and (3) denying defense motions for mistrial and dismissal.  Upon review, we affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

J.C. MCLIN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

Paul E. Lewis, Millington, Tennessee, for the appellant, Kenneth Ray Willis.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; William L. Gibbons, District Attorney General; and Kirby May, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The Shelby County Grand Jury indicted the defendant of DUI by impairment, DUI per se and reckless driving.  The defendant was tried before a jury in Shelby County Criminal Court in February 2008.  The following evidence was presented at trial.

*State's Proof.* Officer Charles Watkins of the Bartlett Police Department was running radar on Bartlett Boulevard between Stage Road and Yale Road in the City of Bartlett on the evening of July 30, 2004, when he observed the defendant traveling at fifty-eight miles per hour in a forty miles per hour zone. Officer Watkins followed the defendant with his blue lights on, and the defendant stopped in the left lane. As he approached the defendant's truck, he observed the defendant tossing a beer can into the back seat. Officer Watkins testified that "[a] strong odor of intoxicant [was] coming from [the defendant]. His eyes were bloodshot and watery. [Officer Watkins] couldn't understand very much [of] what he was saying. It was very mumbled, very slurred speech . . . ." Officer Watkins had the defendant perform three field sobriety tests. He testified that the defendant performed poorly on each test. Officer Watkins then transported the defendant to the headquarters of the Bartlett Police for further testing.

At the police station, Officer Watkins filmed the defendant performing the three field sobriety tests for the second time, and the defendant once again performed poorly. The defendant consented to a breath alcohol test. Officer Watkins identified the videotape of the field sobriety and breath alcohol tests and explained what was happening on the tape while the jury viewed it. He also identified the original informed consent form signed by the defendant. Officer Watkins further testified that he was trained in identifying indications of impairment by the Tennessee Law Enforcement Academy and the Bartlett Police Department. He said that he formed an opinion that the defendant was impaired based on the defendant's behavior.

On cross-examination, Officer Watkins testified that his patrol car was equipped with a video camera, but on the night he pulled the defendant over, the camera did not record the stop and subsequent sobriety tests because it was either out of tape or it malfunctioned. Officer Watkins further testified that he did not follow the field sobriety testing manual issued by the Bartlett Police Department. He did not score tests as instructed by the manual but looked to the full performance of the test. He said he conducted tests in the way he was trained when he joined the police force.

On redirect examination, the assistant district attorney asked Officer Watkins about the indicators provided in the manual, and Officer Watkins said that he looked for each of those indicators. Officer Watkins stated that if he had been using the manual's scoring method, the defendant's score would have indicated a blood alcohol content of 0.1% or greater. Officer Watkins testified that he formed the opinion that the defendant was impaired based on a totality of the circumstances, not relying on any one test. He said that the breath test confirmed his suspicion that the defendant was impaired.

Officer David Keith Smith testified that he was a reserve police officer with the Bartlett Police Department and was with Officer Watkins when they pulled the defendant

-2-

over on July 30, 2004. Officer Smith said that he remembered this case because it was the only DUI he had worked. Officer Watkins was training him that night. Officer Smith said that they turned on their emergency lights when the radar confirmed that the defendant was speeding. They also aimed the car's spotlight on the defendant's truck and were thereby able to see the defendant toss a can over his shoulder. Officer Smith testified that he had previously been employed by a beer company and was very familiar with beer. He recognized the smell of hops coming from the defendant and the defendant's truck. He observed that the defendant had bloodshot eyes, slurred speech, and stumbled when walking. He did not watch the field sobriety tests and was not trained to conduct such tests. Officer Smith accompanied Officer Watkins in the breath alcohol room and watched the defendant for the requisite twenty minutes before Officer Watkins administered the test.

On cross examination, Officer Smith testified that he saw the defendant falling out of his truck and catching himself on the truck's door. He did not know why the patrol car's video equipment did not record the incident. He also did not remember the defendant ever requesting to go to the restroom when they were at the police station.

Charese Henderson testified that she worked as a jailer at the Bartlett Police Department for seven years. She processed the defendant after his arrest. On the defendant's medical intake form, Ms. Henderson observed that the defendant's eyes were bloodshot, and "he smelled of intoxicant.". She noted on the intake form that he appeared to be intoxicated. Ms. Henderson testified that she received annual training in handling intoxicated persons during her time at the police department.

On cross examination, Ms. Henderson testified that she had never observed a test in the breath alcohol room of the police station. She never told anyone that the breath alcohol machine was not working properly.

Agent Robert Marshall of the Tennessee Bureau of Investigation ("TBI") testified that he is in charge of maintaining and evaluating the breath alcohol machines for West Tennessee, including the Bartlett Police Department's machine. The Bartlett Police Department was using an EC/IR-I machine on July 30, 2004. Agent Marshall evaluated the machine for accuracy on June 14, 2004, and the machine met TBI standards. He also evaluated the machine on August 2, 2004, and it met TBI standards. Agent Marshall also testified that he trained the Bartlett police officers, including Officer Watkins, to operate the machine. Agent Marshall said that if the machine was not operating properly, it would not print out the numerical result of the test but would printout an error message instead. He identified the print out of the defendant's result and testified that the defendant's breath test registered at 0.273 blood alcohol content.

On cross-examination, Agent Marshall testified that breath alcohol tests were less reliable than blood alcohol tests. According to him, the error rate on the EC/IR-I breath alcohol machine is "plus or minus five percent." Agent Marshall tested the EC/IR-I's accuracy by using a simulator containing a known quantity of ethyl alcohol. Agent Marshall recorded what simulators he used to test the machine, but he did not have the records with him. The defense counsel presented him with documentation that the simulators had expired in June 2004, but Agent Marshall testified that he would not use expired simulators. Agent Marshall took Bartlett's EC/IR-I machine out of service in December 2004 and replaced it with an EC/IR-II. At some point before a motion hearing in October 2005, he returned Bartlett's EC/IR-I machine to the manufacturer. The manufacturer requests that machines be returned so that they do not fall into the hands of people who are not certified to use them. Agent Marshall did not recall when or if the state gave him the defense's discovery request to produce Bartlett's EC/IR-I machine.

Agent Marshall acknowledged that the date and time on the EC/IR printout of the defendant's test was incorrect and said that the clock on the machine was not critical to the machine's accuracy. Agent Marshall further acknowledged that the log kept by the Bartlett Police Department showed that there were several tests with duplicate numbers.

On redirect examination, Agent Marshall clarified that the duplicate numbers occur when a person refuses to take a breath alcohol test, that person's test number is assigned to another person at a later date. On recross-examination, Agent Marshall estimated that someone would need to consume twelve to fourteen Budweisers to register a 0.273 blood alcohol content.

The state recalled Charese Henderson, who testified that she left her employment at the Bartlett Police Department in October 2007 to work at the Federal Bureau of Prisons. Because the defendant also worked there, she reported to the union president that she had been subpoenaed to testify against him. The union president introduced her to the defendant. The defendant called her at work and emailed her about this case. She did not discuss the case with him.

On cross-examination, Ms. Henderson testified that she was discharged from the Federal Bureau of Prisons for "[f]ailure to provide accurate information" because she did not turn in information on time. She read the email sent from the defendant into the record. The email stated in part, "remember you stated that the machine is never working and always torn up. I didn't dream that up and [the Union President] says he remembers vividly you telling him the machine wasn't working that night." Ms. Henderson, via a special investigations officer, responded that she did not want to communicate with the defendant again about his case and that "[she knew] the prosecuting attorney would not like the fact that [the defendant was] attempting to have [her] speak with [his] attorney." She reported to authorities within

the Federal Bureau of Prisons that the defendant was harassing her. Ms. Henderson testified that the state did not tell her to not speak with defense counsel.

On redirect examination, Ms. Henderson testified that she did not want the defendant contacting her because she thought he was trying to influence her testimony. On recross-examination, she testified that the defendant called her ten times between October 2007 and January 2008.

The state also recalled Agent Marshall, who testified that his records indicated that the solutions he used in June 2004 and August 2004 were not expired. His records were admitted as evidence.

*Defense Proof.* The defense called Mary Katherine McMurray to testify as an expert on breath alcohol testing machines. She testified that the best information to determine whether a particular machine is accurate and reliable is the download data from the machine itself. In the absence of the download data, she looks at "log books, maintenance records, [and] actual test tickets of whenever they checked the calibration . . . ." Concerning the log book for Bartlett's EC/IR-I, Ms. McMurray testified that the log did not show any data for the tests run by the TBI, and she was not provided with the printouts from the TBI tests or with information regarding which specific solutions were used in the tests. Ms. McMurray testified that "nothing on the face of the [defendant's] test ticket . . . [gave her] any indication as to the accuracy or reliability of that particular EC/IR." Her opinion was that she could not "assign any level of accuracy or reliability precision to [Bartlett's] particular EC/IR."

On cross-examination, Ms. McMurray testified that she did not test or interview the defendant, nor was she present at any point in time during his arrest and testing by the Bartlett police. She also said that she has not received certification from the manufacturer of the EC/IR-I. On redirect examination, Ms. McMurray stated that the manufacturer of the EC/IR-I would not allow her to receive factory training on the machine.

Sharon Brown testified that she is the defendant's sister-in-law and was with him at a family reunion on July 30, 2004 from six p.m. until around eleven p.m. She did not see him drink any alcohol in that time period. In her opinion, he did not appear impaired when he left the reunion. On cross-examination, Ms. Brown testified that in the ten years that she has known the defendant, she has seen him drink but "[n]ot to the point of being drunk. . . ."

Leon Willis testified that he is the defendant's brother-in-law and was at the family reunion on July 30, 2004. Mr. Willis was cooking outside and had a cooler of beer with him. He was drinking the beer but did not see the defendant drink any. Mr. Willis said that the

defendant would get quiet and isolate himself when he drank too much. He did not believe that the defendant was impaired on the night of July 30, 2004.

On cross-examination, Mr. Willis testified that the defendant went back and forth between inside and outside at the family reunion. He said that the defendant does not slur his speech when drinking but always speaks slowly. Mr. Willis testified that his definition of impairment was not having control over oneself.

Cedric Brown testified that he is the defendant's brother-in-law and was at the family reunion on July 30, 2004. He did not see the defendant drink any alcohol that day. On cross-examination, Mr. Brown testified that he had never seen the defendant drink too much.

Rosie Norris testified that she is the defendant's mother-in-law, and she was at the family reunion on July 30, 2004. She said she was with the defendant the majority of the evening and did not see him drink anything. On cross-examination, Ms. Norris testified that in the ten years that she has known him the most she had ever seen the defendant drink was one can of beer.

Don Triplett testified that he has worked with the defendant at the Federal Correction Institution for nineteen years. He is a correctional officer and the union president. Mr. Triplett said that when Charese Henderson came to work at the Federal Correction Institution, she came to his office and told him she had to testify against the defendant. She was concerned about keeping her job and whether the defendant would be vindictive. Mr. Triplett testified that Ms. Henderson told him "that the night that [the defendant] came in it didn't appear that he had been drunk. . . . That night, that breathalyzer that they use was broken.". He suggested that she speak with the defendant, and then she left his office. Mr. Triplett said that Ms. Henderson lost her job because she did not provide accurate information on her application. As union president, he was trying to get her job back.

On cross-examination, Mr. Triplett said that when Ms. Henderson first came to him, he took her to where the defendant was working. He did not communicate with her any more about this case. He said he was good friends with the defendant, and they used to spend time together after work until the defendant got married.

The state dismissed the reckless driving charge. After deliberations, the jury found the defendant guilty of DUI by impairment, a Class A misdemeanor, and acquitted the defendant of DUI per se. The court sentenced the defendant to eleven months, twenty-nine days, sixty days of which to be served in the workhouse and the remainder on probation. The trial court denied the defendant's motion for a new trial, and the defendant filed this timely appeal.

## Analysis

The defendant's issues are all either waived or moot. The defendant presents ten issues on appeal. The defendant waived appellate review of the following assignments of error because the defendant merely recited the facts of the case without presenting any argument or citation to authorities in his brief as required by Tennessee Court of Criminal Appeals Rule 10(b): (1) denial of a defense motion to limit testimony of a witness for the state; (2) overruling a defense objection to a witness narrating a videotape; (3) denial of a defense motion for the judge to recuse herself; (4) ordering the defense to move for a directed verdict prior to the close of the state's case; and (5) denying a special jury instruction. The remaining issues each hinge on either the results of the defendant's breath alcohol test or the availability of Bartlett's EC/IR breathalyzer machine. The state contends that these issues are moot because the jury acquitted the defendant of driving with a blood alcohol content of 0.08% or greater ("DUI per se"). We agree that issues relating to the DUI per se charge are moot.

First, the issue of whether the trial court erred in how it allowed the breath alcohol test results to be admitted is moot because the jury heard the results and still acquitted the defendant of DUI per se. The second issue of whether the trial court improperly limited defense counsel's cross-examination of Agent Marshall is also moot in light of the acquittal. The defendant's offer of proof revealed that, had the trial court allowed the cross-examination to continue, Agent Marshall would have been repeating testimony that the jury had already heard about why the EC/IR-I was unavailable. Finally, the defendant contends that the trial court should have either granted a mistrial or dismissed the case due to the unavailability of the EC/IR-I and the state's continuing duty to preserve evidence. This claim is moot in light of the defendant's acquittal on the DUI per se charge. Furthermore, there is ample evidence to support the defendant's DUI by impairment conviction. Officer Watkins saw the defendant toss a beer can into the backseat of his truck. The defendant smelled of alcohol, had bloodshot eyes, and stumbled when he walked. The defendant failed three field sobriety tests on the scene and failed them again when he repeated the tests at the police station. The defendant is not entitled to relief on these issues.

## Conclusion

Based on the foregoing reasons, we affirm the judgment of the trial court.

_____
J.C. McLIN, JUDGE